IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03345-RMR-NYW

MARIA MONTOYA,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, and
DEAN WILLIAMS in his official capacity as Executive Director of the Colorado Department of Corrections,

    Defendants.

---

**THIRD AMENDED COMPLAINT**

---

Maria Montoya, by and through counsel, hereby files this Third Amended Complaint against the Colorado Department of Corrections and Dean Williams in his official capacity as Executive Director of the Colorado Department of Corrections.

**INTRODUCTION**

1. Maria Montoya is a blind woman incarcerated in the custody of the Colorado Department of Corrections ("CDOC").

2. Because Ms. Montoya is blind, CDOC has denied her equal access to vital services, programs, and activities for which she is qualified and which are available to sighted inmates in the custody of CDOC.

3. CDOC has refused to reasonably modify their policies, procedures, and practices to accommodate Ms. Montoya; has refused to provide auxiliary aids and services needed for her

1

to fully and safely participate in CDOC services, programs, and activities; has provided inadequate accommodations and auxiliary aids and services; and has otherwise discriminated against her, with the result that Ms. Montoya has been and continues to be excluded from CDOC services, programs, and/or activities, including education, work assignments, mail, the law library, recreation, information (including but not limited to policies, procedures, postings, regulations, and forms), and events.

## JURISDICTION AND VENUE

4. This action arises under the laws of the United States. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1131 and 1343.

5. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), as all of the events giving rise to the claims occurred in the District of Colorado.

## PARTIES

6. Plaintiff Maria Montoya is currently and at all times relevant to this suit has been a prisoner in the custody of CDOC.

7. Ms. Montoya is currently housed at the Denver Women's Correctional Facility ("DWCF").

8. Ms. Montoya has one or more impairments that substantially limit her major life activity of seeing.

9. Ms. Montoya has a disability as that term is used in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 705(9)(B) (incorporating the definition in 42 U.S.C. § 12102 into, among others, 29 U.S.C. § 794).

10. Defendant Colorado Department of Corrections is a department of the State of Colorado. CDOC has custody of Ms. Montoya.

11. CDOC receives federal financial assistance as that term is used in 29 U.S.C. § 794.

12. Defendant Dean Williams is the Executive Director of the CDOC.

13. As Executive Director, Mr. Williams has the statutory duty to managed the CDOC and all of its facilities. *See, e.g.,* Colo. Rev. Stat. §§ 17-1-103; 24-1-128.5(1.5).

14. References to "CDOC" in this Third Amended Complaint include Mr. Williams.

## FACTS

15. Ms. Montoya lost her sight approximately two and half years ago when she was housed at the Mesa County Jail. She was told she had suffered a stroke.

16. Shortly after, and while her condition was still being evaluated by a neurologist, Ms. Montoya was transferred to DWCF.

17. Although Ms. Montoya lost her sight while in the custody of CDOC, she has never had the opportunity to learn skills necessary for a blind prisoner in the custody of CDOC, such as how to use a cane effectively or how to read and write Braille.

18. CDOC discriminates against Ms. Montoya on the basis of her blindness including but not limited to the discrimination described below.

19. Sighted prisoners in the custody of CDOC receive information from CDOC in writing that is not available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

Case 1:20-cv-03345-RMR-NYW   Document 52   Filed 09/20/21   USDC Colorado   Page 4 of 20

20. CDOC makes orientation materials available to prisoners in writing.

21. CDOC allows prisoners to keep copies of orientation materials in their cells.

22. CDOC does not make orientation materials available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

23. CDOC makes facility handbooks available to prisoners in writing.

24. CDOC allows prisoners to keep copies of facility handbooks in their cells.

25. CDOC does not make facility handbooks available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

26. CDOC makes its Administrative Regulations available to prisoners in writing.

27. CDOC allows prisoners to keep copies of Administrative Regulations in their cells.

28. CDOC does not make its Administrative Regulations available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

29. CDOC makes its Implementation/Adjustments available to prisoners in writing.

30. CDOC allows prisoners to keep copies of Implementation/Adjustments in their cells.

4

31. CDOC does not make its Implementation/Adjustments available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

32. CDOC makes Post Orders available to prisoners in writing.

33. CDOC allows prisoners to keep copies of Post Orders in their cells.

34. CDOC does not make Post Orders available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

35. CDOC communicates with prisoners in writing through, among other documents, memoranda, directives, facility publications, canteen lists, menus, and posting information in areas where prisoners have access.

36. CDOC does not make memoranda, directives, facility publications, menus, canteen lists, or posted information available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

37. Ms. Montoya does not have independent access to orientation materials, facility handbooks, Administrative Regulations, Implementation/Adjustments, Post Orders, memoranda, directives, facility publications, canteen lists, menus, or written information posted in areas where prisoners have access on an effective and equal basis to prisoners without disabilities.

38. CDOC's grievance program requires prisoners to fill out a printed form in

writing.

39. CDOC responds to prisoners' grievances in writing.

40. Ms. Montoya is unable to independently, privately, and without assistance fill in and submit a grievance form.

41. Ms. Montoya is unable to independently, privately, and without assistance read CDOC's responses to her grievances.

42. Medical "kites" are written requests for an appointment with a health care professional to address a medical concern.

43. Submitting a medical kite is how prisoners are expected to request an appointment with a health care professional to address a medical concern.

44. Ms. Montoya is unable to independently, privately, and without assistance write medical kites.

45. In the absence of accessible versions of the materials and programs described above, CDOC assigns blind prisoners an "Offender Care Aide," or "OCA," to read and write for them.

46. OCAs are also tasked with guiding blind prisoners like Ms. Montoya from place to place within their facility as "sighted guides."

47. OCAs are other prisoners in CDOC custody.

48. The need to rely on an OCA for reading and writing compromises Ms. Montoya's security and privacy.

49. Ms. Montoya is at the mercy of her OCA's availability, literacy skills, ethical principles, work ethic, and self-interest.

50. Ms. Montoya is unable to independently, privately, and without assistance read and write her own mail.

51. An OCA must read all of Ms. Montoya's incoming mail, including personal and legal mail, which gives the OCA access to private information about Ms. Montoya and her family members such as names, genders, ages, and addresses, as well as privileged discussions with her criminal and civil attorneys.

52. Ms. Montoya would like to further her study of Braille.

53. CDOC has not permitted her to continue her study of Braille.

54. CDOC has denied her the supplies she needs to write in Braille.

55. An OCA must also write all of Ms. Montoya's outgoing correspondence, giving the OCA access to more personal and confidential information, and putting her at the mercy of the OCA's handwriting, grammar, spelling, and punctuation skills or lack thereof.

56. An OCA must read and write grievance forms, medical kites, and other written communication between Ms. Montoya and CDOC staff and offices.

57. Reading and writing grievance forms, medical kites, and other written communications with CDOC staff and offices gives the OCA access to private medical information and other private, personal, and/or confidential information.

58. In some instances, Ms. Montoya's grievances have been denied due to her inability to timely communicate with an OCA or the inability of an OCA to timely read or write her grievance forms.

59. The lack of accessible information and the need to rely on OCAs and other prisoners denies Ms. Montoya access not only to the information itself but often to medical care,

grievance programs, and other programs described in written documents.

60. Ms. Montoya is not aware of what jobs, classes, and programs are available to her unless she is informed by an OCA or another sighted prisoner.

61. When Ms. Montoya first arrived at DWCF, she was not officially assigned an OCA, and would have to base her perception of time on announcements or other sounds she heard at certain times.

62. Even after being officially assigned an OCA, because her OCA lives in a different part of the facility, Ms. Montoya has missed events or appointments that she could not access without the assistance of an OCA.

63. Upon information and belief, CDOC has provided one computer with screen reading software at DWCF.

64. CDOC has not provided training to Ms. Montoya in how to use the computer with screen reading software.

65. CDOC does not permit Ms. Montoya to use the computer with screen reading software.

66. CDOC does not provide a scanner, printer, or other assistive technology to allow Ms. Montoya to access documents on a computer.

67. Ms. Montoya does not have access to a computer with screen reading software or any other accessible means of reviewing or preparing legal or other documents.

68. CDOC offers educational programming to prisoners in its custody.

69. Ms. Montoya is not afforded access equal to that of sighted prisoners to available or equivalent educational programs.

70. Ms. Montoya has been permitted to take one class, Customer Service.

71. Ms. Montoya was not permitted to tape record the lessons in the Customer Service class.

72. Instead, Ms. Montoya was assigned an OCA to take notes and prepare and submit assignments for her.

73. Ms. Montoya was not able to meaningfully participate in the Customer Service class, as only the OCA could access the class materials.

74. Ms. Montoya asked to take a Computer Skills class.

75. Ms. Montoya was told that the Computer Skills class was inaccessible to her because she is blind.

76. Information concerning available educational programs is not available in an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time.

77. Ms. Montoya would like to participate in educational programming if it were accessible to her.

78. Ms. Montoya would like to be able to tape classes and meetings so that she can review them as sighted prisoners might review notes. CDOC does not permit this.

79. CDOC offers work assignments and vocational programming to prisoners in its custody.

80. Ms. Montoya is not afforded access equal to that of sighted prisoners to available or equivalent work assignments or vocational programs.

81. Prisoners in custody of CDOC are required to work. AR 850-03 ¶ IV.A.2.

82. CDOC makes a variety of work assignments available at various rates of pay.

83. Prisoners who are unable to work due to a disability may be "ADA unassigned," and this assignment is paid at the lowest level. *Id.* ¶ IV.F.11.

84. On information and belief, the ADA unassigned rate is less than $5 per month.

85. On information and belief, other jobs available to sighted prisoners pay as much as $200 per month.

86. On information and belief, some jobs available to sighted prisoners are "incentive jobs" that allow access to resources that are otherwise only limitedly available, such as the computer in the law library.

87. Job descriptions are made available in printed format but not an audible recording and/or digital format on a device with text-to-speech provided timely, and usable with privacy and independence appropriate to the context, that does not require printed material to be read out loud in real time, making it difficult for Ms. Montoya to learn about available work assignments.

88. Ms. Montoya asked for a work assignment and was assigned to clean the doorknobs in her hallway.

89. Ms. Montoya has been injured performing this work assignment before by slipping on spilled water, causing her to fall and sprain her left wrist, and she is routinely knocked off balance by other inmates in the hallway who accidently bump into her or open doors on her.

90. Ms. Montoya has asked to be considered for another position that is safer, but cannot even get an interview for another job, much less a higher paying job or incentive job.

91. Because information concerning work assignments is not accessible, Ms. Montoya generally has no way of learning about opportunities or requesting accommodations.

92. Ms. Montoya would like to participate in safe and meaningful work programming if it were accessible to her.

93. Most living units in CDOC facilities have clocks that sighted prisoners can see to tell time.

94. Ms. Montoya cannot see these clocks.

95. Ms. Montoya has been provided a talking clock in her cell, but outside of her cell, she cannot independently know the time.

96. Talking watches permit blind people to independently know the time.

97. CDOC makes talking watches available.

98. CDOC requires blind prisoners to pay for talking watches.

99. On information and belief, CDOC makes items such as cups and bowls with handles and ergonomic cutlery available through its canteen.

100. These items permit blind people to independently and safely consume meals.

101. CDOC requires blind prisoners to pay for these items.

102. Without these items, Ms. Montoya has suffered burns from hot liquids and been unable to consume certain meals.

103. CDOC makes items such as hot water bottles, protective covers for ice packs, slip-on shoes, and soap on a rope, available.

104. These items would permit Ms. Montoya to independently care for herself and treat incidental injuries she suffers from losing her balance.

105. CDOC requires blind prisoners to pay for these items.

106. Ms. Montoya would like to use a talking calculator.

107. On information and belief, CDOC makes this item available but requires prisoners to pay for it.

108. Because of COVID-19 restrictions, Ms. Montoya has been granted the accommodation of a single cell and has had medications and meals delivered at times over the last year.

109. However, upon information and belief, COVID-19 restrictions will soon be lifted and Ms. Montoya will no longer be permitted the accommodation of a single cell or the delivery of medications and meals.

110. Ms. Montoya requires a single cell because she must keep everything in the same place to ensure both that she can locate necessary items and that she will not injure herself by running into or tripping over misplaced items.

111. Ms. Montoya requires that her medication and meals be delivered when her OCA is not available to guide her through other areas of the facility.

112. Ms. Montoya is in danger of falling or otherwise being injured if she leaves her cell without an OCA.

113. Upon information and belief, when the facility was in quarantine or on lockdown due to COVID-19 between approximately April of 2020 and approximately April of 2021, Ms. Montoya was denied the assistance of an OCA.

114. Ms. Montoya was left to depend on other inmates in her area to assist her.

115. Ms. Montoya fell twice during this time period, both times in the shower, and the

falls caused her to suffer three broken teeth.

116.     Even now that she is able to more regularly gain assistance from her OCA, Ms. Montoya remains fearful of leaving her cell to participate in activities like outside recreation, and she spends most of her time alone and afraid in her cell.

117.     Ms. Montoya has sought mental health care related to her vision loss while in custody.

118.     CDOC has not provided mental health care able to address Ms. Montoya's vision loss while in custody.

**FIRST CLAIM FOR RELIEF:**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12131 *et seq.***

119.     Title II of the ADA prohibits public entities such as CDOC from excluding individuals with disabilities from participating in services or denying them the benefits of their services, programs or activities, or otherwise subjecting such individuals to discrimination. 42 U.S.C. § 12132.

120.     Because she is blind, Ms. Montoya is an individual with disabilities within the meaning of the ADA. 42 U.S.C. § 12102.

121.     Defendants know that Ms. Montoya is blind.

122.     Ms. Montoya's need for accommodations is obvious.

123.     Defendants exclude Ms. Montoya from participation in and/or denies her the benefits of its services, programs, and/or activities and/or subjects her to discrimination on the basis of disability, in violation of Title II and its implementing regulations as more fully described in this Amended Complaint.

124. Such discrimination includes but is not limited to:

   a. denying Ms. Montoya the opportunity to participate in or benefit from CDOC's aids, benefits, and/or services, *see* 28 C.F.R. § 35.130b(1)(i);

   b. affording Ms. Montoya opportunities to participate in or benefit from aids, benefits, and/or services that are not equal to those afforded others, *see id*., § 35.130(b)(1)(ii);

   c. providing Ms. Montoya with aids, benefits, and services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, *see id*., § 35.130(b)(1)(iii);

   d. using criteria and methods of administration that have the effect of subjecting Ms. Montoya to discrimination on the basis of disability, *see id*., § 35.130(b)(3)(i);

   e. using criteria and methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of CDOC's program with respect to Ms. Montoya, *see id.*, § 35.130(b)(3)(ii);

   f. failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *see id*., § 35.130(b)(7);

   g. failing to ensure that communications with Ms. Montoya are as effective as communications with others, *see id*., § 35.160(a)(1);

   h. failing to furnish appropriate auxiliary aids and services where necessary to afford Ms. Montoya an equal opportunity to participate in, and enjoy the benefits of,

CDOC's services, programs, or activities, *see id.*, § 35.160(b)(1); and/or

i. failing to give primary consideration to the requests of Ms. Montoya concerning the types of auxiliary aids and services necessary, *see id*., § 35.160(b)(2).

125. Ms. Montoya is qualified to participate in CDOC's services, programs, and activities within the meaning of Title II.

126. Defendants' actions described in this Amended Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Ms. Montoya's Title II rights.

127. As a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Ms. Montoya has suffered damages, including but not limited to pain and suffering, inconvenience, and emotional distress as more fully described above.

128. Ms. Montoya has been injured and aggrieved by and will continue to be injured and aggrieved by Defendants' discrimination.

**SECOND CLAIM FOR RELIEF:**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**
**29 U.S.C. § 794**

129. Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance such as CDOC. 29 U.S.C. § 794.

130. Because she is blind, Ms. Montoya is an individual with disabilities within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102).

131. CDOC knows that Ms. Montoya is blind.

132. Ms. Montoya's need for accommodations is obvious.

133. Defendants exclude Ms. Montoya from participation in and/or denies her the

benefits of its services, programs, and/or activities and/or subjects her to discrimination on the basis of disability in violation of Section 504 and its implementing regulations as more fully described in this Amended Complaint.

134. Such discrimination includes but is not limited to:

   a. denying Ms. Montoya opportunities to participate in CDOC's programs and activities, *see* 28 C.F.R. § 42.503(b)(1)(i);

   b. denying Ms. Montoya an equal opportunity to achieve the same benefits that others achieve in CDOC's programs and activities, *see id.*, § 42.503(b)(1)(ii);

   c. using criteria or methods of administration that either purposely or in effect discriminate on the basis of disability or defeat or substantially impair accomplishment of the objectives of CDOC's program or activity with respect to Ms. Montoya, *see id.*, § 42.503(b)(3);

   d. failing to provide appropriate auxiliary aids to Ms. Montoya, thereby discriminatorily impairing or excluding her from participation in CDOC's programs and activities, *see id.*, § 42.503(f); and/or

   e. failing to provide reasonable accommodations to Ms. Montoya as necessary to ensure that she has meaningful access to CDOC's programs, activities, or benefits, *see Alexander v. Choate*, 469 U.S. 287, 301 (1985).

135. Ms. Montoya is qualified to participate in CDOC's services, programs, and activities within the meaning of Section 504.

136. Defendants' actions described in this Amended Complaint were intentional and/or

were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Ms. Montoya's rights under Section 504.

137. As a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Ms. Montoya has suffered damages, including but not limited to pain and suffering, inconvenience, and emotional distress as more fully described above.

138. Ms. Montoya has been injured and aggrieved by and will continue to be injured and aggrieved by Defendants' discrimination.

**WHEREFORE, Plaintiff respectfully requests:**

1. That this Court assume jurisdiction;

2. That this Court declare the actions of Defendants described in this Amended Complaint to be in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

3. That this Court enter an injunction ordering Defendants to cease violating Ms. Montoya's rights and cease discriminating against her on the basis of disability;

4. That this Court enjoin Defendants from refusing to reasonably modify its policies, procedures and practices and from refusing to provide auxiliary aids and services necessary for Ms. Montoya to access CDOC documents, legal research and other library information and resources, mail, educational program materials, work program materials, and other printed materials independently and privately;

5. That this Court enjoin Defendants from refusing to ensure that Ms. Montoya has equal opportunity to participate in and benefit from educational and work programs available to sighted prisoners;

      6.      That this Court enjoin Defendants from housing Ms. Montoya in a double cell and restricting her access to delivered medication and meals;

      7.      That this Court enjoin Defendants from denying Ms. Montoya the ability to read, write, conduct legal and other research, and access other CDOC programs independently and privately without unnecessarily relying on OCAs;

      8.      That this Court award Ms. Montoya compensatory damages pursuant to Section 504;

      9.      That this Court award Ms. Montoya and/or her attorneys reasonable attorneys' fees and costs; and

      10.      That this Court award such additional or alternative relief as may be just, proper, and equitable.

Respectfully submitted,

| | |
|---|---|
| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER | BROWN, GOLDSTEIN & LEVY, LLP |

/s/ *Amy F. Robertson*
Amy F. Robertson
1245 E. Colfax Ave. Suite 400
Denver, CO 80218
303.757.7901
arobertson@creeclaw.org

Martha M. Lafferty
525 Royal Parkway, #293063
Nashville, TN 37229
615.913.5099
mlafferty@creeclaw.org

Eve L. Hill
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
410.962.1030
ehill@browngold.com

Attorneys for Plaintiff

Dated: September 20, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals at the following email addresses:

Scott Bauer
scott.bauer@coag.gov

Philip Barrett
philip.barrett@coag.gov

/s/ Mikhal Kidane
Mikhal Kidane
Paralegal
Civil Rights Education and Enforcement Center